

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

May 5, 1959

Hon. Coke R. Stevenson, Jr.
Administrator
Texas Liquor Control Board
P.O. Box 56
Austin 61, Texas

Opinion No. WW-615

Re: Whether the Texas Liquor
Control Board has the
authority to cancel or
suspend, after due hear-
ing, the label approval
provided for in Section
28 of Article 667 of the
Penal Code of Texas, upon
finding that an out-of-
state beer manufacturer
has violated any provi-
sions of the Texas Liquor
Control Act whether such
applies to the label or
not?

Dear Mr. Stevenson:

You have asked our opinion on the following question:
Whether the Texas Liquor Control Board has the authority to can-
cel or suspend, after due hearing, the label approval provided
for in Section 28 of Article 667 of the Penal Code of Texas,
upon finding that an out-of-state beer manufacturer has vio-
lated any provisions of the Texas Liquor Control Act (Articles
666 and 667 et seq., Vernon's Penal Code) whether such viola-
tion applies to the label or not?

You have advised that the procedure followed in the
granting of a label approval is as follows: The applicant
files an application with the Board on the form CAP-111 and
if the Board determines that the label should be approved it
then grants to the applicant a "Certificate of Approval of
Labels of Malt Beverages Domestically Bottled or Packed."
This certificate is given over your signature on form CAP-117.

Examination of the Texas Liquor Control Act reveals
that the Legislature has not provided for a manufacturer's
license for an out-of-state beer manufacturer.

The approval or disapproval of a label is governed by the provisions of Sec. 28, Art. 667, V.P.C., which reads as follows:

"It shall be unlawful for any person to ship or cause to be shipped into this State, or to import into this State, or to manufacture and then offer for sale within this State, or to distribute, sell, or store within the State any beer, ale or malt liquor unless and until a sample of such beer, ale, or malt liquor, or a sample of the same type and quality of beer, ale, and malt liquor, has been submitted to the Texas Liquor Control Board for the purpose of analysis, and has been found by the Texas Liquor Control Board or its representatives to be in compliance with all rules and regulations of the Board relating to quality, purity, and standards of measure.

"It shall also be unlawful for any person to import any beer, ale, or malt liquor into this State, or to manufacture and then offer for sale within this State, or to distribute, sell, or store within this State any beer, ale, or malt liquors unless and until the label thereof has been submitted to the Texas Liquor Control Board or its authorized representatives and such label has been approved by the Texas Liquor Control Board or its authorized representatives as being in compliance with all rules or regulations of the Texas Liquor Control Board or any provisions of the Act relating to the labeling of beer, ale, or malt liquor. Any beer, ale, or malt liquor so imported into this State, or manufactured and then offered for sale within this State, in violation of this Section shall be an illicit beverage. Provided, however, that all labels bearing the same wording or design as labels attached to any beer manufactured in or imported into this State during the period between January 1, 1949, and June 1, 1949, are hereby approved, and no further approval shall be needed by the Manufacturers or Distributors of such brands of beer unless said Manufacturers or Distributors desire to change the wording or design of such labels."

Sec. 28, supra, does not provide for the cancellation or suspension of a label approval.

Other provisions of the Act reveal that the Texas Liquor Control Board is given broad general powers.

The entire Act constitutes an exercise of the police power of the State for the protection and the welfare, health, peace, temperance and safety of the people of the State, and all its provisions should be liberally construed for the accomplishment of that purpose.  Art. 666-2, V.P.C.

The Act in Article 666-6, V.P.C., sets forth the general authority of the Texas Liquor Control Board as follows:

"Among others, the functions, powers, and duties of the Board shall include the following:

"(a) To supervise, inspect, and regulate every phase of the business of manufacturing, importation, exportation, transportation, storage, sale, distribution, possession for the purpose of sale, and possession of all alcoholic beverages, including the advertising and labeling thereof, in all respects necessary to accomplish the purposes of this Act.  The Board is hereby vested with power and authority to prescribe all necessary rules and regulations to that end; to require the filing of such reports and other data by all persons engaged in any phase of the alcoholic beverage business, which it may deem necessary to accomplish the purposes of this Act; to supervise and regulate all licensees and permittees and their places of business in all matters affecting the general public, whether herein specifically mentioned or not, and to authorize its agents, servants, and employees under its direction to carry out the provisions hereof.

"(b) To grant, refuse, suspend, or cancel permits or licenses for the purchase, transportation, importation, sale, or manufacture of alcoholic beverages or other permits in regard thereto.

"(c) . . .

"(d) To exercise all other powers, duties, and functions conferred by this Act, and all powers incidental, convenient, or necessary to enable it to administer or carry out any of the provisions of this Act and to publish all necessary rules and regulations."

Hon. Coke R. Stevenson, Jr., page 4 (WW-615)


Although the Texas Liquor Control Board is given broad general authority, the powers delegated must be determined by the legislative intent evidenced within the framework of the entire Act. As stated in 1 Tex. Jur. Supp. 98:

"Generally the powers of an administrative agency are derived entirely from legislative enactment. It has such powers only as are expressly conferred upon it by statute together with those necessarily implied from powers and duties expressly given or imposed. And while a statute conferring authority upon an agency will be liberally construed, the agency must not go beyond the clear intent of the Legislature. It may not enlarge its powers by its own orders."

While examination of the Liquor Control Act reveals numerous specific provisions setting up a broad pattern for control through licenses and permits, the provisions relating to label approval are limited in scope and are directed toward setting label requirements.

The Texas Liquor Control Act reflects no "clear intent of the Legislature" that label approval is subject to cancellation or suspension for non-related violations by out-of-state beer manufacturers.

Since cancellation or suspension of the label approval provided for in Sec. 28 of Art. 667 of the Penal Code of Texas for a violation of the Texas Liquor Control Act not related to the label by an out-of-state beer manufacturer would enlarge the powers of the Texas Liquor Control Board beyond the legislative intent evidenced in said Act, such action is without authority.


## SUMMARY

The Texas Liquor Control Board does not have the authority to cancel or suspend the label approval provided for in Sec. 28 of Art. 667 of the Penal Code of Texas upon a finding

that an out-of-state beer manufacturer
has violated any provisions of the
Texas Liquor Control Act which does
not apply to the label.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Joe A. Osborn
Assistant

JAO:pc

APPROVED:

OPINION COMMITTEE:
Geo. P. Blackburn, Chairman

Leonard Passmore
Henry Braswell
Dean Davis
Tom McFarling

REVIEWED FOR THE ATTORNEY GENERAL
BY:
W. V. Geppert